STATE BOARD OF HEALTH — ENVIRONMENTAL PROTECTION AGENCY REQUIREMENTS The State Board of Health does have the legal authority to promulgate rules and regulations for the control of the construction or modification of indirect sources as required by the Environmental Protection Agency's requirement for legal authority to prevent such construction or modification as set forth in40 C.F.R., Part 51, as published in the Federal Register, Vol. 38, No. 116, June 18, 1973, at page 15836. The Attorney General has had under consideration your request for an Attorney General's opinion wherein you ask in effect the following questions: 1. In view of the Environmental Protection Agency's requirements for legal authority to prevent the construction or modification of complex sources of air pollution as set forth in 40 C.F.R. Part 51
as published in the Federal Register, Volume 38, No. 116, June 18, 1973, does the Oklahoma State Board of Health have the legal authority to promulgate rules and regulations for the control of the construction of complex sources? 2. Is any action by the Oklahoma State Legislature necessary in order for the Board of Health to promulgate such rules and regulations? Your first question involves a requirement of the Environmental Protection Agency which must be met by the states before they are eligible to enforce the federal legislation dealing with the problem of air pollution, known as the Federal Clean Air Act, 42 U.S.C.A. 1857 et seq. Despite the establishment of minimum national air quality standards, it was intended that enforcement of the Act be carried out by the states. According to Section 42 U.S.C.A. 1857c-2 of the Act, each state was to submit an implementation plan for the enforcement of the national standards. Section 1857c-5 of the Federal Clean Air Act sets out the general provisions for the submission and approval of the state implementation plans. Pursuant to this Section, a series of detailed "Requirements for Preparation, Adoption and Submittal of Implementation Plans" was promulgated and set forth in Title 40, Code of Federal Regulations, Sections 51.1 — 51.32 as published in Vol. 36, Federal Register 22398. These regulations essentially required that the states submit as part of their implementation plans, regulations requiring a review prior to construction or modification of buildings, facilities and installations (termed "stationary sources") so as to require state review of the air quality impact which might arise therefrom. On April 18, 1973, the Administrator proposed amendments to those regulations to expand the scope of review to include pollution arising from mobile source activity associated with such buildings, facilities and installations; that is, facilities which do not themselves emit pollutants, but which attract increased motor vehicle activity. 39 F.R. 7270. Such sources are referred to in the regulations as "complex" or "indirect" sources of air pollution and will be referred to herein by the latter term inasmuch as the subsequent federal rules and regulations have abandoned the former designation. Indirect sources include, but are not limited to: "(a) Highways and roads (b) Parking facilities (c) Retail commercial and industrial facilities (d) Recreation amusement, sports and entertainment facilities (e) Airports (f) Office and government buildings (g) Apartment and condominium buildings (h) Education facilities"39 F.R. 7276 The indirect source review amendments were adopted on June 18, 1973 (38 F.R. 15834). Specifically, 40 C.F.R., 51.11 and 51.18 were amended to provide as follows: "Section 51.11 was amended so that a state implementation plan could not be fully approvable unless the state had legal authority to conduct 'indirect' source review as well as 'direct' (stationary) source review. Section 51.18 was amended to specify in detail the substantive and procedural matters which must be dealt with by states in developing approvable indirect source measures." 39 F.R. 7270
Your first question involves the new requirements for legal authority which are contained in new 51.11 and 51.18. Section 51.11 provides: "Legal authority "(a) Each plan shall show that the State has legal authority to carry out the plan, including authority to: " (4) Prevent construction, modification or operation of a facility, building, structure or installation or combination thereof which directly or indirectly results or may result in emissions of any air pollution at any location which will prevent the attainment or maintenance of a national standard." 38 F.R. 15836; 36 F.R. 22398
Section 51.18 provides in relevant part: "Review of new sources and modifications — "(a) Each plan shall set forth legally enforceable procedures . . . . "(b) Such procedures shall include means by which the State or local agency responsible for final decision making on an application for approval to construct or modify will prevent such construction or modification if it will result in a violation of applicable portions of the control strategy or will interfere with the attainment or maintenance of a national standard." 38 F.R. 15836
Oklahoma's state implementation plan, which would take the form of rules and regulations for indirect source review promulgated by the State Board of Health, must make the above showing of existing legal authority under Section 51.11 in order to be approvable by the Environmental Protection Agency. The question to be determined, therefore, is whether Oklahoma's Clean Air Act, 63 O.S. 2001 [63-2001] — 63 O.S. 2008 [63-2008] (1971) contains such legal authority. Title 63 O.S. 2002 [63-2002](D) (1971) provides: "The State Board of Health is hereby authorized, after public hearing and approval by the Council, to adopt, amend or repeal rules and regulations for the control and abatement of air pollution and establishment of health and safety tolerance standards for discharge of air contaminants to the atmosphere and such additional rules and regulations as it deems necessary to protect the health, safety and welfare of the public." Subsections (k) and (l) under 63 O.S. 2002 [63-2002](C) (1971) designate that the Department of Health shall enforce the Act and empower the Department to: "(k) Bring appropriate court action to enforce final orders on determinations including obtaining injunctions or other proper relief in the district court of the county where any alleged violation occurs or relief is determined necessary. Such action shall be brought in the name of the State Department of Health of the State of Oklahoma. "(1) Emergency Powers — notwithstanding any other provision of this act, the Commissioner of Health, upon receipt of evidence that a source of pollution or a combination of sources of pollution is presenting an immediate, imminent and substantial endangerment to the health of persons, shall take such action as may be necessary to abate the alleged pollution." It is apparent from a reading of the foregoing description of statutory powers that the Board of Health possesses the legal authority required of states in 40 C.F.R., 51.11 and 51.18, supra. It is true that the precise language "prevent construction, modification or operation, etc.," does not appear in the Oklahoma Clean Air Act, 63 O.S. 2001 [63-2001] — 63 O.S. 2008 [63-2008] (1971). The Board, however, has the power to "prevent construction, modification or operation, etc." by virtue of other powers described therein; to-wit: The power to provide for the "control and abatement of air pollution" which would be meaningless without the authority to review, prior to construction, the plans and specifications of potential sources of air contamination. To deny that the Board has such authority would produce the absurd result of many buildings and structures which once constructed could not be utilized because of the Board's clear authority to control and abate air pollution. It is fundamental that the purpose of statutory interpretation is to reach the true intent and meaning of the Legislature. The Legislature is presumed not to have intended an absurd result. Becknell v. State Industrial Court, 512 P.2d 1180 (Okl. 1973); City of Tahlequah v. Franklin, 200 P.2d 417 (Okl. 1948). It is, therefore, the opinion of the Attorney General that your first question be answered in the affirmative in that the State Board of Health does have the legal authority to promulgate rules and regulations for the control of the construction or modification of indirect sources as required by the Environmental Protection Agency's requirement for legal authority to prevent such construction or modification as set forth in 40 C.F.R., Part 51, as published in the Federal Register, Vol. 38, No. 116, June 18, 1973, at page 15836. The foregoing response to your first question makes it unnecessary to respond to your second question. (Allen K. Harris)